UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

|                                                    |     |                                        |
| -------------------------------------------------- | --- | -------------------------------------- |
| CHELSEA CHANEY,                                    | )   |                                        |
|                                                    | )   |                                        |
|       Plaintiff,     | )   |                                        |
|                                                    | )   |                                        |
| v.                                                 | )   | Civil Action File No.                  |
|                                                    | )   | 3:13 CV 00089-TCB                      |
| FAYETTE COUNTY PUBLIC SCHOOL                       | )   |                                        |
| DISTRICT and CURTIS R. CEARLEY,                    | )   |                                        |
|                                                    | )   |                                        |
|       Defendants.    | )   |                                        |
|                                                    | )   |                                        |

## <u>AMENDED COMPLAINT FOR DAMAGES</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Chelsea Chaney ("Plaintiff" or "Chelsea") files this Amended Complaint For Damages against defendants Fayette County Public School District (the "District") and Curtis R. Cearley ("Cearley" and, collectively with District, "Defendants") and shows as follows. For the sake of efficiency and convenience of the parties, the numbering of the paragraphs from Plaintiff's original Complaint remains the same, with new allegations set forth at Paragraphs 31.A and 74.A. Plaintiff has also modified the prayers for relief in relation to each state law count to apply only to Defendant Cearley and has amended its prayers for relief against the District.

## Jurisdictional Allegations

### *Plaintiff Chelsea Chaney*

1.

Chelsea resides in Fayette County, Georgia.  She reached the age of majority (18 years old) on May 2, 2012.  Chelsea is the proper party to bring this lawsuit in her own name and to assert the causes of action set forth below.

### *Defendant Fayette County Public School District*

2.

Defendant District is also known as, and alternately refers to itself as, the "Fayette County Public School System" and/or "Fayette County Public Schools."  The District's principal office and place of business is located at 210 Stonewall Avenue West, Fayetteville, Georgia 30214.

3.

The District may be served with process by service upon Dan Colwell, the District's Interim Superintendent, at that address.

### *Defendant Curtis R. Cearley*

4.

Defendant Cearley is an individual who resides in Coweta County at 8895 Highway 16, Senoia, Georgia 30276.

5.

Cearley is and was at all relevant times the District's Director of Technology Services, a senior administrative District position.  In relation to every claim and count set forth herein, he is sued in his personal and official capacities.

6.

Cearley's principal office and place of business is located at 210 Stonewall Avenue West, Fayetteville, Georgia 30214. Cearley may be served with process at this address.

*Ante Litem Notice*

7.

Under the rule of <u>Payne v. Blackwell</u>, 259 Ga. 483, 384 S.E.2d 393 (1989), the twelve-month ante litem notice period set forth in O.C.G.A. § 36-11-1 in relation to claims against counties does not apply to claims against school districts, nor does it apply to claims against individuals.  Nonetheless, in an abundance of caution, timely notice under that statute was given and served upon both the District and Cearley via correspondence (the "Ante Litem Notice") dated April 9, 2013 and sent via e-mail, regular U.S. mail, and "certified mail, return receipt requested" to each of them.  As evidenced by the corresponding Domestic Return Receipts (the return receipt "green cards"), the

District, by and through its Interim Superintendent, and Cearley both received the Ante Litem Notice on April 10, 2013.

8.

True and correct copies of the Ante-Litem Notice and the relevant green cards, certified under oath by the below-signed counsel, were attached to Plaintiff's original Complaint at Exhibit A and are incorporated herein by reference.

9.

Even if O.C.G.A. § 36-11-1 applied to Chelsea's claims, the Ante Litem Notice was timely provided because, pursuant to O.C.G.A. § 9-3-90, neither the twelve-month period under that statute nor any applicable statutes of limitation began to run until Chelsea's eighteenth birthday, which occurred on May 2, 2012.

*Subject-Matter Jurisdiction, Personal Jurisdiction & Venue*

10.

This Court has personal jurisdiction over each of the Defendants.

11.

This Court has subject-matter jurisdiction over all claims set forth in this Complaint.

12.

Venue is proper in this County and Court.

**Factual Allegations Common To All Counts**

13.

Chelsea is a 2012 graduate of Starr's Mill High School ("Starr's Mill") in Fayette County, Georgia.  Starr's Mill is a District school.

14.

At all times relevant to the below-discussed facts and causes of action, Chelsea was a seventeen year-old (_i.e._, a minor) twelfth-grade student at Starr's Mill.

15.

As is detailed below, Chelsea suffered traumatic emotional harm and other damages as a result of the willful, malicious, and intentional wrongful acts of Cearley.

A. _The Incident: Cearley Plans To – And Does – Publicly Humiliate Chelsea._

A.1. _The "Internet Safety" Seminar_

16.

On or about October 25, 2011, the District planned and held a county-wide "Community Awareness Seminar" (the "Seminar"), which was hosted by Starr's Mill.

17.

The speakers at the Seminar addressed various topics, including a segment entitled "Internet Safety," which was planned and presented by Cearley in his capacity as the District's Director of Technology Services.

18.

Cearley's presentation was intended to underscore the public and permanent nature of the Internet, especially in relation to social media web sites, and, more specifically, to illustrate the ways in which a person can be embarrassed and humiliated by the third-party publication of that person's Internet postings.

19.

Cearley's presentation at the Seminar included a PowerPoint presentation prepared by Cearley.

20.

A paper printout of Cearley's PowerPoint presentation was offered and/or distributed to each and every audience member in attendance at the Seminar.

21.

The Seminar was, upon information and belief, attended by hundreds of Fayette County parents, students, faculty members, and citizens.

*A.2. Cearley's Public Branding Of Chelsea As An Alcoholic Slut*

22.

One of the PowerPoint slides in Cearley's presentation was entitled "Social Networking."

23.

This slide consisted of a cartoon  in which a young daughter confronts her mother over the mother's old Facebook page, which lists the mother's hobbies as "bad boys, jello shooters, and body art."

24.

"Jello shooters" are an alcoholic snack served at parties, nightclubs, and bars made from Jello, but with rum, vodka, or grain alcohol substituted for the water.  Because of the concentrated alcohol content and the sweet taste, Jello shooters are known for the quick and substantial intoxication they cause in those who consume them.

25.

"Body art" refers to art made on, with, or consisting of the human body.  This term includes tattoos, piercings, branding, scarification, subdermal implants, body painting, and many other forms.  Many forms of body art involve nudity and/or (whether fairly or not) are associated with a wild or promiscuous

lifestyle and/or a refusal to conform with society's norms and core values.

26.

The phrase "bad boy" refers to a cultural archetype characterized by promiscuity, narcissism, deceitfulness, and thrill-seeking.

27.

The obvious implication of the cartoon is that the mother was or should have been mortified and humiliated by her previous Facebook postings, which essentially labeled her as a sexually-promiscuous, anti-establishment, abuser of alcohol.

28.

Incredibly, the immediately-following slide in Cearley's PowerPoint presentation – entitled "Once It's There – It's There To Stay" – included a picture of bikini-clad Chelsea standing next to a life-size cutout of singer Calvin "Snoop Lion" Broadus (who was known at the time as "Snoop Dogg").

29.

Even more incredibly, the slide included Chelsea's full name ("Chelsea Chaney"), which was clearly visible to all attendees at the seminar.

30.

Taken in context with Cearley's presentation in general, and especially in light of the immediately-preceding slide in particular (the "jello shooters, bad boys, and body art" cartoon), Cearley's implication was clear: Because Chelsea wore a bikini at the lake and posed with a picture of a rap singer, she must necessarily be, or at least should and would be publicly branded as, a sexually-promiscuous abuser of alcohol, (or, in today's vernacular, *an alcoholic slut*) who should be more careful about her Internet postings.

31.

In short, to illustrate the manner in which Internet postings can later shame and disgrace the poster, Cearley stole Chelsea's photograph and presented it out of context to intentionally shame and disgrace Chelsea *by name* in front of hundreds of her teachers, her peers, their parents, and other Fayette County citizens.

31.A(1)

Cearley's theft and misuse of Plaintiff's private photo was not an isolated or rogue incident.

31.A(2)

Cearley combed numerous other student Facebook pages and

misappropriated a number of other student pictures for possible use in his presentations.

31.A(3)

Upon information and belief, Cearley, by virtue of his position as Director of Technology Services for the entire district and/or by delegation of authority from another official vested with such, had "final policy making authority" for the District in relation to certain Internet and technology-related issues, including, but not limited to, the planning and execution of the Seminar giving rise to Plaintiff's claims.

31.A(4)

In additional to any "final policy making authority" that originally vested in Cearley or that was duly delegated to him, Cearley's actions were expressly ratified and approved beforehand by other District officials with "final policy making authority," including, but not limited to, Deputy Superintendent Samuel F. Sweat ("Sweat").

31.A(5)

Deputy Superintendent Samuel F. Sweat was aware of – and, to the extent he held technology-related policy making authority, pre-approved and otherwise ratified – Cearley's misappropriation and intended use of Plaintiff's picture.

31.A(6)

Moreover, Sweat was aware that Cearley's Internet-based stalking and investigation of Plaintiff was one of many instances of such conduct by Cearley.

31.A(7)

In attempting to defend Cearley's presentation to a parent of one of Chelsea's classmates, Sweat made statements to the effect that "you should have seen the ones that Cearley collected but didn't use" and stated that the picture of Plaintiff ultimately used by Cearley was "the tamest" of the bunch.

31.A(8)

Sweat also stated that many of the other photos of Fayette County students collected (i.e., stolen) by Cearley showed the use by the pictured students of cigarettes and alcohol and that some showed students in even greater degrees of undress than did the picture of Plaintiff.

31.A(9)

Among other District personnel, Starr's Mill High School Assistant Principal John W. Bouchell, Jr. was also aware prior to the Seminar of Cearley's misappropriation of Plaintiff's photo and his intended use of the photo at the Seminar.

32.

The paper copies of Cearley's presentation (which included Chelsea's picture and name) given to all attendees guaranteed that Chelsea's humiliation would live on in perpetuity long after Cearly's presentation at the seminar.

33.

A true and correct copy of the handout distributed by Cearley was attached to Plaintiff's original Complaint at Exhibit B and is incorporated herein by reference.

34.

A true and correct copy of the photograph of Chelsea used and published by Cearley during the Seminar presentation was attached to Plaintiff's original Complaint at Exhibit C and is incorporated herein by reference.

35.

The picture in question was, in fact, taken on a family lake trip by Mary Cartwright, the mother of a female friend of Chelsea who invited Chelsea to accompany the Cartwright family on that outing.

36.

After that trip, Chelsea posted the picture on a semi-private portion of her Facebook page accessible *only* by Chelsea's

Facebook "friends" and "friends-of-friends."

37.

Without Chelsea's knowledge or permission and without notice to her or her parents, Cearley misappropriated Chelsea's photograph from her Facebook page and then used it at the Seminar intentionally to embarrass and humiliate her.

38.

The Cartwright family beach trip involved neither sex nor alcohol.

39.

Cearley's statements and implications regarding Chelsea's alleged use of alcohol and sexual promiscuity were false.

### A.3. _Chelsea's Devastating Emotional Trauma_

40.

Cearley's use and discussion of Chelsea's picture did indeed have the effect he intended.

41.

Chelsea suffered egregiously severe emotional distress.  She was humiliated, demeaned, and degraded.  She became the object of ridicule and scorn by a portion of her classmates and teachers.

42.

Chelsea's shame and disgrace became even more magnified in the following days as students and faculty members at Starr's Mill split decisively into two groups: one in support of Chelsea, mortified by the illegal and malicious acts of a senior school administrator who set out to – and very successfully did – intentionally humiliate a seventeen year-old girl; and an opposing group who apparently believed that Chelsea "got what was coming to her" for the audacious act of posting a picture of herself in a bathing suit on a private or semi-private portion of her Facebook page.

43.

In the days that followed the Seminar, classes at Starr's Mill ground to a halt as entire periods were spent debating the issue and discussing the legal and ethical issues arising from Cearley's unconscionable attack on Chelsea.

44.

As a direct result of Cearley's willful and malicious acts, Chelsea suffered extreme mental and emotional trauma.

45.

Chelsea was forced to seek and receive professional counseling specifically to deal with her public humiliation by Cearley.

46.

In the days and weeks that followed the Seminar, Chelsea repeatedly broke down, both at school and at home, becoming hysterical and inconsolable.

47.

In one text to her father pleading for emotional help, Chelsea wrote that, specifically because of Cearley's acts, "my life is falling apart."

B. *Cearley's Wrongful Acts Were Prohibited By Law, Policy & Rule*

48.

Cearley's wrongful acts giving rise to the claims set forth herein were ministerial, rather than discretionary.  The doctrine of official immunity does not apply to insulate him from Chelsea's claims.

49.

The acts and omissions by Cearley that give rise to Chelsea's claims and that underlie his sick attempt to humiliate Chaney violated numerous written polices and mandatory rules that

absolutely forbade him from committing those very acts and
omissions.

50.

The then-effective rules and policies that forbade the
conduct by Cearley giving rise to Chelsea's claims included
provisions in Facebook's Statement of Rights and Responsibilities
(the "SRR") defining ownership of posted content and prohibiting
the unauthorized use by third-parties of such content.

51.

The then-effective rules and policies that forbade the
conduct by Cearley giving rise to Chelsea's claims included
provisions in Facebook's SRR that forbade any Facebook user from
"bully[ing], intimidate[ing], or harass[ing]" any other Facebook
user.

52.

The then-effective rules and policies that forbade the
conduct by Cearley giving rise to Chelsea's claims included
provisions in Facebook's SRR that prohibited any Facebook user
from using Facebook to "do anything unlawful, misleading,
malicious, or discriminatory."

53.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in Facebook's SRR that forbade any Facebook user from using Facebook to "infringe [upon] or violate someone else's rights."

54.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the District's "Internet Safety Policy" ("ISP") and the District's "Internet Acceptable Use" ("IAU") policy that forbade the unauthorized disclosure, use or dissemination of certain personal identifying information belonging to a student.

55.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the "District Technology Services Policy – Staff Use of Internet and E-mail" (the "DTSP") that prohibited the access or download of any content or material from the Internet unless the downloading staff member complies with all copyright laws applicable to the downloaded materials

56.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the DTSP that reiterated the governance of all District personnel by the Copyright Act and further provided for the personal liability of any District staff member who violated that Act.

57.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the DTSP that prohibited District staff members from using "any electronic communication" – which includes Facebook postings like the picture of Chelsea illegally copied by Cearley – "in a way that could cause offense to others or harass or harm them, . . .  or in any other way be inappropriate for the school environment."

58.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the DTSP that prohibited District staff members from breaching "principles of confidentiality and privacy"

arising from or relating to "accessing . . . or disclosing information about students[.]"

59.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included the Copyright Act.

60.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the "Fayette County Public Schools Guidelines for Use of Social Media" (the "Social Media Guidelines") requiring that, if a staff member was "participating on a social media site for school or district-related business, it must be done with the approval of [that staff member's] supervisor," which, upon information and belief, Cearley never obtained.

61.

The then-effective rules and policies that forbade the conduct by Cearley giving rise to Chelsea's claims included provisions in the Social Media Guidelines requiring that, in relation to interactions involving a student's Facebook page, the District employee notify the student's parents beforehand of the

employee's intended use and interaction involving the student's social media page.

### C. *No Immunity: Cearley's Wrongful Acts Were Malicious, Willful And Wanton.*

62.

Even if Cearley's complained-of actions were somehow deemed "discretionary" rather than "ministerial" (which is not the case), the doctrine of official immunity would still not apply to protect Cearley because his acts were malicious, willful, and wanton.

63.

The purpose of Cearley's presentation was to illustrate the harm – indeed, the shame, the humiliation, and the disgrace – that can result from the public dissemination of allegedly-inappropriate content posted to the Internet.

64.

By stealing Chelsea's photo and presenting it (albeit, out-of-context and with actionably-false implications and innuendoes) to Fayette County's citizens, parents, and students, Cearley hit the bulls eye regarding the goal of his presentation – **to illustrate the manner in which shame, humiliation, and degradation can result from the publication of a person's**

**Internet postings, he intentionally and specifically shamed,**

**humiliated, and degraded Chelsea.**

### D. *District Liability*

65.

In relation to each and every count set forth below against
Cearley, the District is likewise liable for Cearley's wrongful
acts for negligent training, negligent supervision, and
complicity.  In relation to each of these causes, the District
was willfully indifferent to the known or obvious consequences of
Cearley's wrongful acts.  The District is also liable pursuant to
42 U.S.C. § 1983 as set forth below.

### Causes Of Action

### COUNT I
### CIVIL RIGHTS

66.

Plaintiff realleges and incorporates by reference the
allegations contained in paragraphs 1 through 65 above as if the
same were set forth herein in full.

67.

Like any private citizen of Georgia, Chelsea had and has the
right to be free from unwarranted publicity.

68.

Like any private citizen of Georgia, Chelsea had and has the right to be free from the unwarranted appropriation and exploitation of her person and likeness.

69.

Like any private citizen of Georgia, Chelsea had and has the right to be free from the publicizing of her private affairs in which the public has no legitimate concern.

70.

Like any private citizen of Georgia, Chelsea had and has absolute rights of personal security and personal liberty, which entitled and entitle her to be let alone.

71.

Like any private citizen of Georgia, Chelsea had and has absolute rights of personal security and personal liberty, which entitled and entitle her to live a life of seclusion and to be free of unwarranted interference by the public about matters with which the public is not necessarily or properly concerned.

72.

Like any private citizen of Georgia, Chelsea had and has absolute rights of personal security and personal liberty, which entitled and entitle her to be protected from any wrongful

intrusion into her private life which would outrage or cause
mental suffering, shame or humiliation to a person of ordinary
sensibilities.

73.

42 USC § 1983 provides that "Every person who, under color
of any statute, ordinance, regulation, custom, or usage, of any
State or Territory ... subjects, or causes to be subjected, any
citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress[.]"

74.

Similar guarantees of Chelsea's rights and liberties
violated by Cearley and the District arises from and sound in the
Fourth, Ninth, and Fourteenth Amendments of the Constitution of
the United States.

74.A(1)

The Federal Constitution, by virtue of the Fourteenth
Amendment prohibits unreasonable searches and seizures by state
officers.

74.A(2)

The Fourth Amendment also applies to States through the Fourteenth Amendment.

74.A(3)

The reach of constitutional proscription against unreasonable searches and seizures includes county school officials.

74.A(4)

The pivotal issue in relation to a Fourth Amendment claim is whether the subject search and seizure is reasonable.

74.A(5)

Students, like other citizens, have reasonable expectations of privacy.

74.A(6)

Cearley, in violation of numerous laws, rules, and regulations detailed elsewhere herein, misappropriated Plaintiff's picture.

74.A(7)

In light of the many laws, rules, and regulations ultimately violated by Cearley, Plaintiff necessarily had a reasonable expectation of privacy in her picture.

74.A(8)

As noted above, the photograph was visible at Plaintiff's Facebook page only to those people she had specifically approved — her Facebook "friends" and "friends of friends."

74.A(9)

The scheme of Cearley, Sweat, and potentially other District officials to misappropriate that picture — in violation of Plaintiff's Fourth and Fourteenth Amendment rights — and then publicly display that picture represents an illegal search and seizure pursuant to the Fourth Amendment.

75.

The conduct of Cearley and the System complained of in this Complaint constitutes "state action" within the meaning of the Fourteenth Amendment to the Constitution of the United States and pursuant to 42 U.S.C. § 1983.

76.

Cearley and the District violated Chelsea's due process-related constitutional guarantees, including her right to privacy. Any reasonable educator or official under the same circumstances would have objectively and absolutely realized that Cearley's outrageous conduct violated Chelsea's constitutionally guaranteed rights.

77.

The Supreme Court of the United States has recognized, as a matter of constitutional structure, a right to privacy implicit in the guarantee of due process of law. The "zone of privacy" protected by the Constitution includes public disclosure of private matters.  Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

78.

This right of privacy is embraced within the absolute rights of personal security and personal liberty to be let alone; to live a life of seclusion; to be free of unwarranted interference by the public about matters which the public is not necessarily concerned; and to be protected from any wrongful intrusion into an individual's private life which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

79.

Governmental misconduct that involves or results in a stranger peering without consent at an unclothed or partially clothed person is a serious invasion of privacy.  Courts characterize privacy violations of the sort prohibited by the Constitution – i.e., of the character endured by Chelsea due to

26

the wrongful acts of Cearley and the District – to be "demeaning,
dehumanizing, undignified, humiliating, terrifying, unpleasant,
embarrassing, [and] repulsive, signifying degradation and
submission."

80.

The harm is particularly acute when, as is the case with
Chelsea, the victim has done *nothing* to warrant or justify the
complained-of governmental acts.

81.

At all times relevant to his acts and omissions described
above, Cearley was acting under color of law in his official
capacity as the Director of Technology for the District, a senior
administrative position.

82.

Although Cearley's wrongful acts and omissions were done
under color of his authority as the District's Director of
Technology, those acts and omissions violated Chelsea's right of
privacy as guaranteed by the United States Constitution,
including, but not limited to, the Fourth, Ninth, and Fourteenth
Amendments.

83.

Cearley's  acts were committed unlawfully, intentionally, maliciously, and with knowledge that he was exceeding his authority as the District's Director of Technology and with further knowledge that he was depriving Chelsea of rights guaranteed to her by the Federal Civil Rights Act and the United States Constitution, including, but not limited to, the due process clause of the Fourteenth Amendment.

84.

Cearley's wrongful acts shock the conscience of a reasonable person.

85.

As a direct and proximate result of Defendants' actions, Chelsea suffered extreme humiliation, shame, embarrassment, and severe mental and emotional stress.

**COUNT II**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

86.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

87.

Cearley's wrongful acts and omissions were intentional

and/or reckless.

88.

Cearley's wrongful acts and omissions were extreme and outrageous.

89.

Cearley's wrongful acts and omissions were and are the actual, legal, and proximate cause of Chelsea's emotional distress.  Cearley was aware of at all times and intended the damage that his wrongful acts would cause.

90.

Chelsea's emotional distress resulting from Cearley's misconduct was and is severe.

91.

Cearley is liable to Chelsea for intentional infliction of emotional distress in an amount to be proved at trial.

**COUNT III**
**INVASION OF PRIVACY – FALSE LIGHT**

92.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

93.

Cearley's oral presentation, visual presentation, and hard-copy handouts all constitute false publicity that depict Chelsea as something and someone she is not (i.e., an alcoholic slut).

94.

The false light in which Cearley placed Chelsea was and is highly offensive to a reasonable person.

95.

At all relevant times prior to and during his presentation, Cearley had knowledge of the falsity of the publicized matter and the false light in which his actions placed Chelsea.

96.

Cearley acted with reckless disregard and/or intentionally regarding the falsity of the publicized matter and the false light in which his actions placed Chelsea.

97.

Cearley is liable to Chelsea for "false light" invasion of privacy in an amount to be proved at trial.

**COUNT IV
INVASION OF PRIVACY – INTRUSION**

98.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the

same were set forth herein in full.

99.

Cearley's misappropriation and use of Chelsea's picture without her permission and in violation of myriad laws, rules, and policies represented an unreasonable intrusion into Chelsea's private concerns.

100.

Cearley's misappropriation and use of Chelsea's picture without her permission and in violation of myriad laws, rules, and policies involved a prying and intrusion into her private concerns that was and is offensive and objectionable to a reasonable person.

101.

Cearley is liable to Chelsea for "intrusion into personal matters" invasion of privacy in an amount to be proved at trial.

**COUNT V**
**INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE AFFAIRS**

102.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

103.

The photograph of Chelsea misappropriated by Cearley and publicly disclosed during his Seminar presentation was private.

104.

The context in which the photograph was used and published – a formal school event involving students, parents, faculty, and members of the general public – was and is offensive and objectionable to a reasonable person of ordinary sensibilities under the circumstances.

105.

Cearley is liable to Chelsea for "public disclosure of private affairs" invasion of privacy in an amount to be proved at trial.

**COUNT VI**
**INVASION OF PRIVACY – APPROPRIATION OF NAME & LIKENESS**

106.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

107.

For his own purposes and benefits, Cearley misappropriated and used Chelsea's picture without her permission, without her

parents' permission, and in violation of myriad laws, policies, and rules.

108.

Chelsea's privacy interests outweighed any public interest in the appropriation, publication, and/or use of her picture by Cearley.

109.

The appropriation, publication, and use of Chelsea's picture by Cearley subjected Chelsea to public hatred, contempt, and ridicule, and other damages.

110.

Cearley is liable to Chelsea for "appropriation of likeness" invasion of privacy in an amount to be proved at trial.

**COUNT VII**
**SLANDER**

111.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

112.

The above-detailed oral statements by Defendants constitute slander pursuant to O.C.G.A. § 51-5-4(a) 4.

33

113.

As a result of these statements, Chelsea has suffered injury to her name and reputation, has been exposed to public hatred, contempt, and ridicule, and has suffered other damages.

114.

Cearley is liable to Chelsea for slander in an amount to be proved at trial.

**COUNT VIII**
**SLANDER PER SE**

115.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

116.

The above-detailed oral statements by Defendants constitute slander per se pursuant to O.C.G.A. §§ 51-5-4(a)(1) and (2).

117.

As a result of these statements, Chelsea has suffered injury to her name and reputation, has been exposed to public hatred, contempt, and ridicule, and has suffered other damages.

118.

Cearley is liable to Chelsea for slander *per se* in an amount to be proved at trial.

**COUNT IX**
**LIBEL**

119.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

120.

The above-detailed written statements and acts by Defendants constitute libel.

121.

As a result of these statements, Chelsea has suffered injury to her name and reputation, has been exposed to public hatred, contempt, and ridicule, and has suffered other damages.

122.

Cearley is liable to Chelsea for libel in an amount to be proved at trial.

**COUNT X**
**LIBEL PER SE**

123.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

124.

The above-detailed written statements by Defendants constitute libel per se pursuant to O.C.G.A. §§ 51-5-4(a)(1) and (2), which sections relate by their black letter to slander only, but have been incorporated by Georgia courts into the definition of libel, as well.

125.

As a result of these statements, Chelsea has suffered injury to her name and reputation, has been exposed to public hatred, contempt, and ridicule, and has suffered other damages.

126.

Cearley is liable to Chelsea for libel *per se* in an amount to be proved at trial.

**COUNT XI**
**GROSS NEGLIGENCE**

127.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

128.

Cearley owed and owes a general duty to use ordinary care and diligence in the performance of his duties as the District's Director of Technology Services.

36

129.

In committing the wrongful acts described above, Cearley breached this duty.  Moreover, Cearley failed to exercise even slight diligence (i.e., that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances).

130.

In committing the wrongful acts described herein, Cearly was grossly negligent.

131.

As a direct and proximate result of Cearley's gross negligence, Chelsea has suffered substantial damages.

132.

Cearley is liable to Chelsea for gross negligence in an amount to be proved at trial.

**COUNT XII**
**NEGLIGENCE**

133.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

134.

Cearley owed and owes a general duty to use ordinary diligence in the performance of his duties as the District's Director of Technology Services.

135.

In committing the acts and omissions described above, Cearley breached this duty.

136.

In committing the wrongful acts described herein, Cearly was negligent.

137.

As a direct and proximate result of Cearley's negligence, Chelsea has suffered substantial damages.

138.

Cearley is liable to Chelsea for negligence in an amount to be proved at trial.

**COUNT XIII**
**NEGLIGENT TRAINING**

139.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

140.

The District owed and owes a general duty to use ordinary diligence in the training of its administrators and employees, including Defendant Cearley, its Director of Technology Services.

141.

The District breached this duty.  Said breach was the proximate cause of the wrongful acts by Defendant Cearley complained of herein.  Moreover, the District was deliberately indifferent to the obvious consequences of its actions.

142.

As a direct and proximate result of the District's negligence, Chelsea has suffered substantial damages.

143.

Defendant District is liable to Chelsea for its negligent training of Cearley in an amount to be proved at trial.

**COUNT XIV**
**NEGLIGENT SUPERVISION**

144.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

145.

The District owed and owes a general duty to use ordinary

diligence in the supervision of its administrators and employees, including Defendant Cearley, its Director of Technology Services.

146.

The District breached this duty.  Said breach was the proximate cause of the wrongful acts by Defendant Cearley complained of herein. Moreover, the District was deliberately indifferent to the obvious consequences of its actions.

147.

As a direct and proximate result of the District's negligence, Chelsea has suffered substantial damages.

148.

Defendant District is liable to Chelsea for its negligent supervision of Cearley in an amount to be proved at trial.

**COUNT XV**
**ATTORNEY FEES PURSUANT TO O.C.G.A. § 13-6-11**

149.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

150.

In relation to their wrongful acts described above and to each and every count set forth above, Cearley has acted in bad faith and has caused Chelsea unnecessary trouble and expense.  As

40

detailed above, Cearley intentionally and in bad faith engaged in prohibited conduct with full knowledge of the harm that would result to Chelsea.

151.

Pursuant to O.C.G.A. § 13-6-11, Chelsea is entitled to recover all expenses and fees (including the reasonable attorney fees expended herein by Chelsea) arising from Cearley's illegal, improper, and intentional wrongful acts and omissions.

152.

Chelsea is also entitled to recover prejudgment interest on her costs and fee-related damages.

## COUNT XVI
### PUNITIVE DAMAGES PURSUANT TO O.C.G.A. § 51-12-5.1

153.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 above as if the same were set forth herein in full.

154.

In relation to their wrongful acts described above and to each and every count set forth above, Cearley acted with willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which necessarily raises a presumption of conscious indifference to the consequences of his actions.

41

155.

Cearley knew and intended that his wrongful and bad faith acts would cause substantial harm to Chelsea.  Cearley intended the consequences of their actions.

156.

Cearley is an "active tort-feasors" as that term is used in O.C.G.A. § 51-12-5.1(f).

157.

Given the egregious and intentional nature of Cearley's conduct, Chelsea is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1(f) to punish and penalize Cearley, to deter Cearley from similar future misconduct, and to deter other persons and entities similarly situated to Cearley from engaging in future misconduct like that of Cearley.

## DEMAND FOR JURY TRIAL

Chelsea hereby demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Chelsea Chaney prays for judgment against Defendants, and each of them, jointly and severally, that includes:

(a)   Special and general damages in an amount to be proven at trial of not less than two million dollars ($2,000.000);

42

(b)  Punitive and exemplary damages in an amount to be proven at

     trial;

(c)  Her attorney fees and expenses in an amount to be proved at

     trial; and

(d)  Such other and further relief as this Court deems just and

     proper.

This 10th day of June, 2013.

                              **WELLBORN, WALLACE & WOODARD, LLC**

                              s/Paul F. Wellborn III
                              Paul F. Wellborn III
                              Georgia Bar No. 746720
                              Jamie P. Woodard
                              Georgia Bar No. 775792

                              Attorneys for Plaintiff Chelsea Chaney

1175 Peachtree St., NE
100 Colony Square, Suite 300
Atlanta, Georgia 30361

Phone:          (404) 815-9595
Fax:            (404) 815-9957
E-mail:         pete@wellbornlaw.com
                jamie@wellbornlaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

|                                                    |     |                                        |
|----------------------------------------------------|-----|----------------------------------------|
|                                                    | )   |                                        |
| CHELSEA CHANEY,                                    | )   |                                        |
|                                                    | )   |                                        |
|           Plaintiff,                               | )   |                                        |
|                                                    | )   |                                        |
| v.                                                 | )   | Civil Action File No.                  |
|                                                    | )   | 3:13 CV 00089-TCB                      |
| FAYETTE COUNTY PUBLIC SCHOOL                        | )   |                                        |
| DISTRICT and CURTIS R. CEARLEY,                    | )   |                                        |
|                                                    | )   |                                        |
|           Defendants.                              | )   |                                        |
|                                                    | )   |                                        |

**RULE 7.1 CERTIFICATE OF
COMPLIANCE WITH LOCAL RULE 5.1**

This is to certify that the foregoing *Amended Complaint* was prepared using 12 point Courier New font and accordingly complies with Local Rule 5.1. This certificate is given in compliance with Local Rule 7.1(D).

This 10th day of June, 2013.

**WELLBORN, WALLACE & WOODARD, LLC**

s/Paul F. Wellborn III
Paul F. Wellborn III
Georgia Bar No. 746720
Jamie P. Woodard
Georgia Bar No. 775792

Attorneys for Plaintiff Chelsea Chaney

1175 Peachtree St., NE
100 Colony Square, Suite 300
Atlanta, Georgia 30361

```
Phone:          (404) 815-9595
Fax:            (404) 815-9957
E-mail:         pete@wellbornlaw.com
                jamie@wellbornlaw.com
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

CHELSEA CHANEY,                    )
                                   )
          Plaintiff,               )
                                   )
v.                                 )  Civil Action File No.
                                   )  3:13 CV 00089-TCB
FAYETTE COUNTY PUBLIC SCHOOL       )
DISTRICT and CURTIS R. CEARLEY,    )
                                   )
          Defendants.              )
                                   )

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2013, I electronically filed the foregoing Amended Complaint with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Attorneys for Defendant Fayette County Public School District
Phillip L. Hartley (phartley@hhhlawyers.com)
Hieu M. Nguyen (hnguyen@hhhlawyers.com)

Attorneys for Defendant Curtis Cearley
Matthew Moffett (mmoffett@grsmb.com)
Jennifer M. Guerra (jguerra@grsmb.com)

**WELLBORN, WALLACE & WOODARD, LLC**

s/Paul F. Wellborn III
Paul F. Wellborn III
Georgia Bar No. 746720
Jamie P. Woodard
Georgia Bar No. 775792

Attorneys for Plaintiff Chelsea Chaney

1175 Peachtree St., NE
100 Colony Square, Suite 300
Atlanta, Georgia 30361

Phone:          (404) 815-9595
Fax:            (404) 815-9957
E-mail:         pete@wellbornlaw.com
                jamie@wellbornlaw.com