IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| CHELSEA CHANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NUMBER 3:13-cv-89-TCB |
| FAYETTE COUNTY PUBLIC | ) | |
| SCHOOL DISTRICT and | ) | |
| CURTIS R. CEARLEY, | ) | |
| | ) | |
| Defendants. | ) | |

O R D E R

This case comes before the Court on Defendant Fayette County Public

School District's renewed motion to dismiss for failure to state a claim [11].

I.   Background

On October 25, 2011, Fayette County Public School District (the

"District") hosted a county-wide "Community Awareness Seminar" at

Starr's Mill High School, located in Fayette County, Georgia.  At the time,

Plaintiff Chelsea Chaney was a seventeen-year-old student at Starr's Mill.

The seminar discussed a number of topics, including Internet safety and the

permanency of postings to social media websites.  Defendant Curtis Cearley, director of technology services for the District, created and presented at the seminar a PowerPoint presentation entitled "Internet Safety."

The presentation was designed to illustrate the permanent nature of social media postings and how those postings could be embarrassing if published by third parties.  Part of the presentation included a slide of a cartoon depicting a daughter approaching her mother about the mother's Facebook page from years past, which listed the mother's hobbies as "body art, bad boys, and jello shooters."  Chaney alleges that the obvious implication of this cartoon was the mother was humiliated by this Facebook posting, which according to Chaney labeled her as a "sexually-promiscuous, anti-establishment[] abuser of alcohol."

The slide that immediately followed the cartoon was entitled "Once It's There—It's There to Stay" and featured a picture of Chaney in a bikini standing next to a life-size cutout of singer Calvin "Snoop Lion" Broadus (also known as "Snoop Dogg").  Cearley found this photo by browsing students' Facebook pages for pictures to use in his presentation.  The picture was originally taken when Chaney accompanied a friend on her

family's vacation, which Chaney contends did not involve sex or alcohol. The slide included Chaney's full name.

Chaney alleges that when the slide featuring her picture is considered in conjunction with the previous slide of the embarrassed-mother cartoon, the implication is that Chaney is also or would also be branded as a sexually-promiscuous abuser of alcohol who should be more careful about her Internet postings. Paper copies of the presentation, including the slide featuring Chaney's picture and name, were distributed to those attending the seminar.

At all times relevant to this case, the District had in place the "District Technology Services Policy—Staff Use of Internet and E-Mail" ("DTSP"). The DTSP included provisions that prohibited District employees from using any electronic communication "in a way that could cause offense to others or harass or harm them . . . or [could] in any other way be inappropriate for the school environment." The DTSP also prohibited District employees from breaching "principles of confidentiality and privacy" arising from or relating to "accessing . . . or disclosing information about students[.]"

The District also had guidelines for the use of social media which, according to the complaint, required employees to obtain approval from their supervisors if the employee was "participating" on a social media site for school or District-related business.  Specifically, the guidelines required a District employee to notify a student's parents beforehand of his intended use of and interaction with a student's social media page.

Chaney permitted access to her Facebook page using a semi-private setting that allowed her Facebook "friends" and "friends of friends" to view her page, including her pictures.  Because Chaney was a minor, this was the most inclusive privacy setting she could choose.  Neither Chaney nor her parents were notified of or consented to Cearley's intended use of and interaction with Chaney's Facebook page prior to Cearley's presentation.

Chaney alleges that Cearley had "final policymaking authority" for the District in relation to certain Internet and technology-related issues, including the planning and execution of the presentation.  Chaney additionally alleges that Cearley's acquisition and use of her picture were pre-approved by Deputy Superintendent Samuel F. Sweat, and that Starr's Mill assistant principal, John W. Bouchell, Jr., was also aware of Cearley's acquisition and intended use of Chaney's picture prior to the presentation.

4

On April 29, 2013, Chaney filed this action in the Superior Court of Fayette County, averring that Defendants violated her constitutional right to privacy under the Fourth and Fourteenth Amendments as well as several rights afforded her by state law.  Chaney sued the District and Cearley in his official and individual capacities.

On May 24, Defendants timely removed the action to this Court.  That same day, the District filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on behalf of itself and Cearley in his official capacity.  On June 10, Chaney filed an amended complaint prompting this Court to issue an order denying the motion to dismiss as moot on June 12.

On June 24, the District filed a renewed Rule 12(b)(6) motion to dismiss on behalf of itself and Cearley in his official capacity.  On July 11, Chaney filed her brief in opposition to the motion.  Because Cearley has not moved to dismiss the claims against him in his individual capacity, this Order addresses only the claims against the District and Cearley in his official capacity.  Also, because this Order does not resolve all issues in this case, the Court intentionally avoids, where possible, commenting on the appropriateness of Cearley's actions.

II.   Discussion

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).   The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering a defendant's motion to dismiss under Rule 12(b)(6), the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff.  *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011).  But the court need not accept the plaintiff's legal conclusions, nor must it accept as true legal conclusions couched as factual

allegations. *Iqbal*, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and . . . determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### B.   Chaney's Federal-Law Claims

Even when construing the facts most favorably towards Chaney, her claims that Defendants violated her Fourth Amendment rights to be free from illegal search and seizure and her Fourteenth Amendment right to privacy fail.[1] The Court notes that Chaney's amended complaint and brief in opposition to Defendants' motion blend case law addressing the Fourth and Fourteenth Amendment. However, the claims are distinct, and the Court has attempted to address her arguments under each separate amendment.

---

[1] Chaney mentions the Ninth Amendment in passing in her complaint, but she fails to provide any factual allegations or legal argument to support such a claim. Thus, she fails to state a claim under the Ninth Amendment against the District and Cearley in his official capacity.

### 1.   Legal Standard

Local governing bodies and local officials sued in their official capacity can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, and injunctive relief when the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 659 (1978).  Local governments and local officials in their official capacity may also be sued for constitutional deprivations pursuant to governmental custom even when that custom has not been formally approved.  *Id.*

Alternatively, a local government cannot be held liable under § 1983 "unless action pursuant to official policy of some nature caused a constitutional tort."  *Id.* at 691.  Specifically, a local government cannot be held liable on a respondeat-superior theory for the tortious acts of its employees.  *Id.*  In *Monell*, the Supreme Court explained, "the fact that Congress did specifically provide that A's [local government employee's] tort became B's [local government's] liability if B 'caused' A to subject

another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent." *Id.* at 692.

A plaintiff must prove two elements to prevail on a § 1983 claim. First, a plaintiff must show a deprivation of constitutional or federal statutory rights. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Second, a plaintiff must identify the local government policy or custom that caused the deprivation of federal rights. *Id.*

### 2.    Deprivation of Federal Rights

#### a.    Fourth Amendment

Chaney avers that the "scheme of Cearley, Sweat and potentially other District officials" to misappropriate and then publicly display her Facebook picture represents an illegal search and seizure in violation of the Fourth Amendment.  She argues that she had a reasonable expectation in the privacy of her Facebook picture, and that Cearley and the District violated this expectation when Cearley used her photo in his presentation.

"In order for Fourth Amendment protections to apply, the person invoking the protection must have an objectively reasonable expectation of privacy in the place searched or item seized." *Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010).  In establishing a reasonable expectation of

privacy, a person must show that she had a subjective expectation of privacy and must show a willingness of society to recognize that expectation as legitimate.  *Id.*  Even if she had a subjective expectation of privacy in her Facebook photos, Chaney cannot show that her expectation is legitimate.

Chaney contends that her privacy-setting choice of "friends and friends of friends" was "semi-private" and that her Facebook page was accessibly "only to those people she had specifically approved."  Thus, she contends that the District improperly searched her Facebook page and stole, i.e., illegally seized, her picture.  However, Chaney fails to acknowledge the lack of privacy afforded her by her selected Facebook setting.  While Chaney may select her Facebook friends, she cannot select her Facebook friends' friends.  By intentionally selecting the broadest privacy setting available to her at that time, Chaney made her page available to potentially hundreds, if not thousands, of people whom she did not know (i.e., the friends of her Facebook friends).

"The Supreme Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."  *Rehberg,* 611 F.3d at 842.  Chaney not only voluntarily turned over the picture to her Facebook friends, but she also chose to share

the picture with an additional audience of unknown size, likely comprised of people Chaney did not know, subject to continuous expansion without Chaney's approval.

Cited by both parties, the Court finds *United States v. Meregildo,* 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012), instructive.  In *Meregildo*, the Government gained access to the defendant's Facebook profile through one of the defendant's Facebook friends.  The Government used the information from the defendant's profile to obtain a search warrant.  The defendant challenged under the Fourth Amendment the Government's method of using a cooperating witness, who was the defendant's Facebook friend, to gain access to his profile.

The court held that the defendant surrendered his expectation of privacy when he posted to his Facebook profile and shared those posts with his Facebook friends.  It reasoned that when an individual shares a photograph with his friends on Facebook, that individual "has no justifiable expectation that his 'friends' would keep his profile private," and any "legitimate expectation of privacy ended when he disseminated posts to his 'friends' because those 'friends' were free to use the information however they wanted."  *Id.*

Here, Chaney went a step further.  She shared her Facebook page, which includes her pictures, not only with her friends but their friends, too. By doing so, Chaney surrendered any reasonable expectation of privacy when she posted a picture to her Facebook profile, which she chose to share with the broadest audience available to her.  Thus, Chaney cannot show that society would be willing to recognize her expectation of privacy as legitimate.  *See also Rehberg*, 611 F.3d at 843 (defendant had no legitimate expectation of privacy in phone and fax numbers he dialed); *United States v. Norman*, 448 F. App'x 895, 897 (11th Cir. 2011) (no objectively reasonable expectation of privacy in computer files shared with a peer-to-peer file-sharing program).

The fact that the photo was of Chaney in a bikini does not require a different result.  According to Chaney, Defendants incorrectly argue that her right to privacy is not infringed so long as a person's "bare private parts" are not exposed.  However, Chaney misconstrues Defendants' argument and relevant authority.

The Eleventh Circuit "accept[s] as axiomatic the principle that people harbor a reasonable expectation of privacy in their 'private parts.'" *Justice v. City of Peachtree City*, 961 F.2d 188 (11th Cir. 1992).  And Chaney cites

numerous cases, including *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009), and *Justice,* 961 F.2d at 188, that contain favorable language regarding a cultural norm that "people have a reasonable expectation not to be unclothed involuntarily [and/or not] to be observed unclothed." *Justice*, 961 F.2d at 191.

However, most of the cited cases involve situations, unlike the present one, where the injured party had a reasonable expectation of privacy and were either forced to undress and had their private parts inspected and touched or were unaware they were being filmed while undressing, e.g., strip searches of arrestees and security cameras videotaping middle-school locker rooms.  In stark contrast, this case involves Chaney voluntarily posting a picture of herself in a bikini and sharing that picture on a social media website with the broadest audience possible for a Facebook user her age.  The cases cited by Chaney are so factually dissimilar as to be irrelevant to this case and unable to sustain Chaney's invasion-of-privacy claim under the Fourth Amendment.

The fact that Chaney was a minor student at the time of the presentation also does not create an expectation of privacy under the Fourth Amendment where there otherwise is not one.  The cases cited by

Chaney for this premise are inapposite.  *See Shelton v. Tucker*, 364 U.S. 479 (1960) (addressing teachers' challenge to constitutionality of state statute requiring disclosure of outside organizations they were involved with as condition of employment); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (addressing students' free-speech rights under First Amendment); *Justice*, 961 F.2d at 191 (addressing reasonableness of police strip-searching minor arrestee).  And the one case that is relevant to this action, *Carroll ex rel. Carroll v. Parks*, 755 F.2d 1455, 1457 n.2 (11th Cir. 1985), is misquoted.  Also, Chaney has not persuasively argued that these cases show that her status as a minor student make her alleged injuries of Fourth-Amendment magnitude.

In conclusion, Chaney has not shown that society would recognize as legitimate her expectation of privacy in her Facebook photo, and as a result the Court need not address Chaney's arguments that she was subjected to an unreasonable search and seizure.  Because Chaney cannot show a violation of her Fourth Amendment rights, the Court will grant Defendants' motion on this claim.

14

### b.   Fourteenth Amendment

Chaney also avers that Defendants violated her "due process-related constitutional guarantees, including her right to privacy."  She contends that "[g]overnmental misconduct that involves or results in a stranger peering without consent at an unclothed or partially clothed person is a serious invasion of privacy."  She argues that the violation was magnified when the picture was included as part of Cearley's presentation.

The right to privacy is founded in the Fourteenth Amendment's concept of personal liberty.  *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977); *see also Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir. Unit B Jan. 1981) (implicitly recognizing the Supreme Court's holding in *Whalen* that the Fourteenth Amendment includes a constitutional right to privacy).  The right protects an individual's interest in avoiding disclosure of personal matters and her interest in making certain types of decisions independently.  *Whalen*, 429 U.S. at 598 n.23.  Stated differently, the right protects an individual's (1) right to nondisclosure and confidentiality and (2) decisionmaking.  *Fadjo*, 633 F.2d at 1175.

The Court finds *Parks*, 755 F.2d at 1456, controlling in this case.[2]  In *Parks*, a photograph accidentally exposing a student's penis was printed with a "lurid, prurient caption" in a high school yearbook without the student's consent.  The student brought suit against a teacher, the high school principal, the county CEO, and the county board of education, averring that his right to privacy had been violated by the defendants' printing and distributing the yearbook and refusing to cease distribution when he requested that they do so.

In reviewing whether the printing and distribution of the picture amounted to an invasion of privacy prohibited by the U.S. Constitution, the Eleventh Circuit held that the

> United States Constitution does not create a blanket right of privacy for citizens.  Those 'zones of privacy' which have been recognized as warranting protection under the Constitution include the right to be free from unreasonable search and seizure, and the right to make personal decisions regarding marriage, contraception, procreation and family relationships. Nowhere in these protected areas may [appellant] find a constitutional right to be free from public embarrassment or damage to his reputation.

---

[2] Contrary to Chaney's argument that applying *Parks* to this case "ignores both the evolution of privacy law over the past three decades" and the Eleventh Circuit's "own blistering criticism of the now-supplanted law upon which it based its [*Parks*] opinion," Chaney has not provided any case that supports her argument or overrules or gives reason to doubt *Parks*.  Consequently, *Parks* is still valid.

*Id.* at 1456-57 (internal citations omitted).  The court further held that although it found the defendants' conduct "deplorable, reprehensible, and insensitive," the student had not stated a "federal constitutional deprivation."  Thus, the circuit court agreed with the district court that any claim raised by the appellant should be raised under tort law.

The facts of this case are even more compelling than *Parks* to support a finding that Chaney did not suffer a federal constitutional deprivation.  Unlike the student in *Parks*, Chaney intentionally shared a picture of herself in a bikini with a broad audience, and she had no control over how that audience might use her photo.  And like the student in *Parks*, Chaney contends that she has suffered extreme humiliation, shame, embarrassment, and mental and emotional distress as a result of Defendants' use of the photo.  As the court held in *Parks*, the constitutional right to privacy does not include a "right to be free from public embarrassment or damage to [her] reputation."  *Id.* at 1457.  Thus, Chaney's claim is not of constitutional magnitude, and like the student's claims of "public embarrassment and mental anguish" in *Parks*, her claims most appropriately arise under state tort law, not the Fourteenth Amendment.  *Id.* at 1457.  *See also Lindbloom v. Steube*, 440 F. App'x 757,

758 (11th Cir. 2011) (Fourteenth Amendment right to privacy not violated when official police reports were disseminated with allegedly false statements because plaintiff had no "constitutional right to be free from public embarrassment or damage to his reputation.") (quoting *Parks*, 755 F.2d at 1457).

Consequently, Chaney has failed to state a Fourteenth Amendment right-to-privacy claim upon which relief may be granted.  Accordingly, the Court will grant Defendants' motion on this claim as well.

### 3.    Policy or Custom

Even if the Court were to find that Chaney had suffered a federal constitutional violation, Defendants' motion would still be granted.

In order to state a § 1983 claim against government entities such as the District, a plaintiff must identify a specific deprivation of federal rights *and* the local government policy or custom that caused the deprivation of federal rights.  *Brown*, 520 U.S. at 404.  A plaintiff can satisfy the policy or custom requirement by showing her constitutional violations resulted from one of the following: (1) an express policy of the local government; (2) a custom or practice so well-settled and pervasive it assumes the force of law; or (3) the actions of an official with final policymaking authority.  *Cuesta v.*

*Sch. Bd. of Miami–Dade Cnty.*, 285 F.3d 962, 966 (11th Cir. 2002); *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000).  Whether a particular official has final policymaking authority is a question of state law.  *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991).

> a.  Express Policy or Pervasive Custom or Practice

Chaney cannot point to an express policy that violated her rights under the Fourth and Fourteenth Amendments.   Rather, Chaney alleges that relevant District policies, which allegedly prohibit District employees from using electronic communication in any way that could cause offense or harm to a student, protect students and expressly prohibit Cearley's actions.  Consequently, Chaney cannot show that her alleged constitutional deprivations were caused by an express District policy, and the District cannot be held liable for Cearley's breach of express policies.  *See Roy*, 509 F. Supp. 2d at 1321.

Chaney also cannot point to a custom or practice "so well-settled and pervasive it assumes the force of law."  *Denno*, 218 F.3d at 1277.  There is no evidence to suggest, nor does Chaney allege, that the use of students' Facebook pictures was a widespread and longstanding practice.  Chaney

refers only to Cearley's conduct.  This one instance falls far short of showing there was a widespread practice or custom.  *See id.* ("isolated incidents are insufficient to establish a policy or custom") (internal alterations, quotations and citation omitted); *McQuerter v. City of Atlanta*, 572 F. Supp. 1401, 1420 (N.D. Ga. 1983) (isolated failure to discipline police officers was insufficient to establish a custom or widespread practice on behalf of the city).

### b.    Final Policymaking Authority

Finally, Chaney avers that Cearley had "'final policy making authority' for the District in relation to certain Internet and technology-related issues, including, but not limited to, the planning and execution of the Seminar" as a result of "his position as Director of Technology Services for the entire district and/or by delegation of authority from another official vested with such."

Municipal liability may be based on a single decision by a municipal official who has final policymaking authority.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  However, "the fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability

20

based on an exercise of that discretion." *Id.* at 481-82.  Rather, the official

"must also be responsible for establishing final government policy

respecting such activity before the municipality can be held liable." *Id.* at

482-83.  This means that the official does not have final policymaking

authority over particular functions if his decisions are "subject to

meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d

1396, 1401 (11th Cir. 1997).  However, if the "authorized policymakers

approve a subordinate's decision and the basis for it, their ratification

would be chargeable to the municipality because their decision is final."

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Whether a particular official has final policymaking authority is a

question of state law, *Brown*, 923 F.2d at 1480, and it is a legal question for

the Court, *Scala*, 116 F.3d at 1398-99.  Georgia law explicitly confines

control and management of a school district to the county board of

education, O.C.G.A. § 20-2-50, and "a county board is without power to

delegate its authority to manage the affairs of the school district." *State Bd.*

*of Educ. v. Elbert Cnty. Bd. of Educ.*, 146 S.E.2d 344, 348 (Ga. Ct. App.

1965).  In fact, a county board of education "has no authority, by contract or

otherwise, to delegate to others the duties placed on the board by the

Constitution and laws of Georgia." *Chatham Ass'n of Educators v. Bd. of Pub. Educ.*, 204 S.E.2d 138, 139-40 (Ga. Ct. App. 1974).

Based on the above law, to state a claim of liability against the District based on Cearley's use of her Facebook photo, Chaney must show that the Fayette County Board of Education did one of the following: (1) approved Cearley's use of Chaney's photo; (2) delegated to Cearley its final authority to determine how and when District employees could use students' social media photos; or (3) delegated to another District employee this authority, who also had the authority to approve Cearley's actions, and who in fact approved Cearley's actions.

Chaney's complaint does not mention the Fayette County Board of Education, that the board approved Cearley's actions or that the board delegated to Cearley or to another District employee the final authority to make decisions as to how and when students' social media photos could be used by District employees.  In fact, Georgia case law suggests that the board was without authority to delegate any of its final policymaking power on this issue to Sweat, Cearley or any other District personnel.

Citing to *Roy ex rel. Roy v. Fulton County School District,* 509 F. Supp. 2d 1316, 1321 (N.D. Ga. 2007), and *Smith ex rel. Lanham v. Greene*

22

*County School District,* 100 F. Supp. 2d 1354, 1361 (M.D. Ga. 2000),
Chaney contends that this case is analogous to a county school board's
delegating to school principals its final authority to impose short-term
suspensions on students.  Both *Roy* and *Smtih* do recognize such delegation
of authority; however, delegating to school principals the authority to make
case-by-case suspension decisions for students within their schools is a far
cry from delegating to Cearley or Sweat the authority make a district-wide
policy choice as to how students' social media photos can be used.

Georgia law is clear that the management of a school district is within
the exclusive control of the county board of education, and Chaney has not
alleged any facts to support her legal conclusions that Cearley had final
policymaking authority by virtue of his position or that another District
employee had such authority and approved Cearley's actions.  In fact, she
does not address at all the District's argument that the board did not
delegate to any District employee, whether Cearley or his supervisors, its
authority to make district-wide policy choices with respect to the use of
students' social media photos.  Indeed, she has not provided any facts or
case law that show the board has previously delegated this type of authority
or that it delegated such authority under the facts of this case.  *Cf. Roy*, 509

23

F. Supp. 2d at 1321 (allowing discovery on final-policymaker argument because case law showed that other county boards had delegated to principals power to make short-term suspension decisions).

Here, the board had express policies that appear to prohibit Cearley's use of Chaney's photo.  "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."  *Praprotnik*, 485 U.S. at 127.  Consequently, while Cearley may have had discretion to create the presentation that used the photo, Chaney has not shown that this discretion amounted to final policymaking authority.  As stated earlier, "the fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Pembaur*, 475 U.S. at 480.  Chaney has not provided the Court with "more," nor does she make a strong argument for allowing discovery to find more, as discussed below.

In addition, Chaney has not averred that the board approved Cearley's actions, and she has not pled any facts to support her averment that another District employee had final authority on this issue, that

Cearley was this employee's subordinate, and that the employee did in fact approve Cearley's use of the photo.  Indeed, Chaney is not even consistent as to whether Cearley's actions were approved.  On the one hand she contends that Cearley's actions were approved by a District employee with final authority, and on the other hand she avers that Cearley "never obtained" his supervisor's approval, as allegedly required by the Social Media Guidelines, to participate on a "social media site for school or district-related business."

Perhaps realizing the vulnerability of her final-policymaker theory of recovery, Chaney contends that even if the Court finds her arguments on this point unavailing, the proper course is to allow her discovery, not to dismiss her claims, as recognized in *Roy,* 509 F. Supp. 2d at 1321. However, *Roy* is distinguishable, and discovery is not needed.

In *Roy*, this Court denied a motion to dismiss because the pleadings did not provide adequate information to determine if an administrator acted as a final policymaker.  In reaching its decision, the Court applied a two-step analysis to determine if an administrator acted as a final policymaker.  This analysis depended, in part, on whether the administrator's discretionary decision was constrained by policies not of his

own making because "those policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127.  In her complaint, Chaney explicitly avers that there were numerous policies in place that prohibited Cearley's conduct and prevented other District personnel, including Sweat, from ratifying such conduct; thus, those policies are the acts of the District, not Cearley's alleged departure therefrom.

In addition, *Roy* involved a student's short-term suspension, and the Court recognized that state case law showed that suspension decisions had been delegated to school principals.  By contrast, Chaney has not provided, and the Court has been unable to locate, any case law to support her contention that the authority to use a student's social media photo in contravention of policy has been delegated to District employees.  Thus, Chaney has not shown this Court that discovery would be a fruitful exercise.

Because Chaney has failed to sufficiently plead facts showing that she suffered a deprivation of federal rights caused by a District policy or custom, the Court will grant the motion to dismiss these claims.

C.    Chaney's State-Law Tort Claims

Chaney also brings several tort claims against the District and Cearley in his official and individual capacity.[3]  Defendants argue that these claims are barred by sovereign immunity.  Chaney failed to respond to this argument; consequently, this portion of Defendants' motion is deemed unopposed.  This alone supports granting this portion of the motion.  *See Magluta v. Samples*, 162 F.3d 662, 664-65 (11th Cir. 1998) (action may be dismissed under this Court's Local Rule 7.1B when a party fails to respond to a motion to dismiss).  Moreover, the Court has reviewed the merits of Defendants' sovereign-immunity argument and finds them to be well-taken.

The Georgia Constitution extends sovereign immunity "to the state and all of its departments and agencies," GA. CONST. art. 1, § 2, para. IX(e), and this includes school districts, *Coffee Cnty. Sch. Dist. v. Snipes*, 454 S.E.2d 149, 150 (Ga. Ct. App. 1995).  Thus, a school district is immune from suit absent "an Act of the General Assembly which specifically provides that

---

[3] It is unclear from Chaney's complaint whether her allegations that the District failed to train and failed to supervise Cearley support claims under § 1983 or state law. The District characterized them as state tort claims, and Chaney did not argue otherwise in her brief in opposition.  Thus, the Court treats them as state tort claims.

sovereign immunity is thereby waived and the extent of such waiver."  GA. CONST. art. 1, § 2, para. IX(e).

The Georgia Tort Claims Act provides for a limited waiver of state sovereign immunity for the torts of its officers and employees; however, it expressly excludes school districts from the waiver.  *Snipes,* 454 S.E.2d at 150.  This Court has not found, nor has Chaney identified, any state constitutional or legislative provision specifically waiving the District's immunity from liability in this type of case; therefore, Chaney's state tort claims against the District are barred by sovereign immunity.

Furthermore, Chaney's state tort claims against Cearley in his official capacity are also barred by sovereign immunity.  *See Bd. of Comm'rs v. Johnson*, 717 S.E.2d 272, 276 (Ga. Ct. App. 2011) ("Because any recovery of damages would be paid out of the public purse, county employees sued in their official capacities are entitled to invoke the protection afforded by sovereign immunity.").

Because Chaney's tort claims against the District and Cearley in his official capacity are barred by sovereign immunity, the Court will grant the motion to dismiss these claims.

III.    Conclusion

The District's renewed motion to dismiss for failure to state a claim [11] is GRANTED, and its motion to stay [12] is DENIED AS MOOT.  The claims against the District and Cearley in his official capacity are DISMISSED, and the District is DROPPED as a party to this action

IT IS SO ORDERED this 30th day of September, 2013.

Timothy C. Batten, Sr.
United States District Judge

29